**[Cite as *Vickroy v. Vickroy*, 2025-Ohio-4364.]**

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
HOCKING COUNTY

| | | |
|---|---|---|
| BARBARA VICKROY, | : | |
| | : | Case No. 23CA17 |
| Plaintiff-Appellee, | : | |
| | : | |
| v. | : | <u>DECISION AND JUDGMENT</u> |
| | : | <u>ENTRY</u> |
| CHARLES VICKROY, et al., | : | |
| | : | |
| Defendants-Appellants. | : | **RELEASED: 09/12/2025** |

_____
<u>APPEARANCES:</u>

James R. Kingsley, Circleville, Ohio, for appellant.

Gregg R. Lewis, Columbus, Ohio, for appellee.
_____

Wilkin, J.

{¶1} This is an appeal by Charles Vickroy ("Husband") of a Hocking County Court of Common Pleas judgment entry that granted Barbara Vickroy's (Wife) complaint and Husband's counterclaim for divorce. On appeal Husband asserts five assignments of error.

{¶2} In his first assignment of error, Husband claims that the trial court committed prejudicial error when it found that the property at 8045 Township Road 241 SE, Logan Ohio 43138 ("8045 Twp. Rd. property") was marital property. Because we conclude the court's finding was supported by some competent credible evidence, we overrule his first assignment of error.

{¶3} In his second assignment of error, Husband argues that the trial court committed prejudicial error when it did not reduce the fair market value of the property at 8095 Township Road 241 SE, Logan, Ohio 43138 ("8095 Twp. Rd. property")

commensurate with the value of the life interest retained by the grantors. Because we conclude that the trial court's value of 8095 Twp. Rd. property was supported by some competent, credible evidence, we overrule Husband's second assignment of error.

{¶4} In his third assignment of error, Husband asserts that the trial court committed prejudicial error when it divided Wife's wrongful draws. Because we find that the trial court erred when it ordered the amount of these expenditures to be split between the parties without first determining whether they were financial misconduct, we sustain Husband's third assignment of error.

{¶5} In his fourth assignment of error, Husband asserts that the trial court committed prejudicial error when it found him in contempt and ordered him to pay Wife $2,449.32 to reimburse 12 monthly payments on a camper. Because we find that the trial court did not abuse its discretion in so ordering, we overrule Husband's fourth assignment of error.

{¶6} In his fifth assignment of error, Husband asserts that the trial court committed prejudicial error when it made apparent clerical errors. Because the parties agree that the trial court erred in determining Husband's child support order, we sustain Husband's fifth assignment of error and remand for the trial court to correct the calculation and reimburse Husband for any overpayment that he made.

{¶7} Therefore, we affirm in part, and reverse in part, the trial court's judgment of entry of divorce, and remand the matter to the trial court for further proceedings consistent with this decision.

### FACTS AND PROCEDURAL BACKGROUND

{¶8} Husband and Wife were married on July 20, 1996. They had two children MacKenzie, born May 4, 2004, and Mackayla, born November 29, 2005.

{¶9} On August 4, 2020, Wife filed for divorce. On August 31, 2020, Husband filed an answer and a counterclaim. On November 19, 2020, the court issued a restraining order preventing the parties from "dispos[ing] of any asset of either or both parties or the business, whether marital or non-marital, other than for ordinary, necessary, and regular living expenses and for the current payments on existing marital obligations."

{¶10} The Husband is the record owner of a trash collection business Kay-Zie Enterprises, Inc., dba Vickroy's Disposal Corporation ("company"). Wife managed the business. They also owned two parcels of real property. One is located at 8045 Twp. Rd. and the other at 8095 Twp. Rd. They also owned numerous vehicles, and a camper among other items. Finally, they also shared several debts.

{¶11} A two-day final hearing was held before a magistrate on August 10, 2022 and November 16, 2022. On January 26, 2023, the Magistrate's Decision was filed.

{¶12} On February 6, 2023, Husband filed 11 objections to the Magistrate's Decision, including that Wife allegedly misappropriated company funds, which he alleged was not addressed in the Magistrate's Decision. On that same day, Husband filed a motion for "contempt/setoff/judgment." Husband reiterated the claim made in his objections that Wife had inappropriately withdrawn money from the company for her own benefit, e.g., $4,000 loaned to her sister.

{¶13} On April 12, 2023, Husband filed a pleading titled "defendant's motions." Among other matters, the motion moved the court to order Wife to restore $29,250.22 of expenditures that she made from the business checking account after the final hearing and, thus, were not in the record. Husband asserted that if the funds were not restored, they must be offset against his first equity payment to Wife.

{¶14} On May 18, 2023, Husband filed a motion for "recapitulation motion for set off for post-decree economic misconduct." Husband again alleged that Wife "wrongfully spent" funds from the company after the final hearing that were not considered at the final hearing. These expenditures included the ones listed in Husband's April 12, 2023 motion, as well as additional ones that totaled $34,965.77. Husband claimed that the expenditures were financial misconduct because when they were made, Wife no longer had any interest in the business because the Magistrate's Decision allocated the company to him.

{¶15} On June 21, 2023, Wife filed a motion contra to Husband's objections to the Magistrate's Decision. She moved the court to overrule all 11 of Husband's objections, including his third objection alleging that she misappropriated company funds. However, she did not deny making these expenditures or attempt to justify them.

{¶16} The trial court overruled six of Husband's objections, including summarily finding that the magistrate addressed Wife's "personal expenses[.]" The court otherwise sustained four assignments of error, and dismissed one.

{¶17} On September 23, 2023, the trial court issued its final decree. The court granted the divorce and allocated the parties parental rights and responsibilities for their one minor child.

{¶18} The decree further valued and divided all the marital property as follows:

| Item | Value | To Wife | To Husband |
| --- | --- | --- | --- |
| Kay-Zie Enterprises, Inc. | $523,000 | | H |
| 8045 Twp. Rd. | $215,000 | | H |
| 8095 Twp. Rd. | $280,000 | | H |
| Jeep Wrangler | $1,800 | | H |
| 2008 Toyota Tundra | $10,000 | W | |
| 2005 Mustang | $5,000 | W | |
| 2019 Toyota Highlander | $23,000 | W | |
| 2017 MPG Ultralite Camper | $20,000 | W | |
| 2008 Toyota Tundra | $3,000 | | H |
| 2007 Suzuki Blvd. | $6,000 | | H |
| 1990 Honda 250 | $1,000 | | H |
| 1990 Honda 100 | $100 | W | |
| Kids Side by Side | $500 | | H |
| Black Toyota | $300 | | H |
| Black 4 Runner | $300 | | H |
| Silver Toyota Pick Up | $300 | | H |
| White Ford | $300 | | H |
| Brown Ford | $300 | | H |
| Olive Tractor | $1,000 | | H |
| Farmall Tractor | $7,000 | | H |
| Total Wife | | $58,100 | |

| | | | $1,093,200 |
|---|---|---|---|
| Total Husband | | | |

{¶19} The court found the following to be marital debt and divided it as follows:

| Debt | Amount Owed | To Wife | To Husband |
|---|---|---|---|
| VCNB | $2,460 | | H |
| B if A Camper | $12,670.29 | W | |
| Sams | $3,210.19 | W | |
| Buckle | $463.31 | W | |
| JC Penny | $263.50 | W | |
| Care Credit | $969.72 | W | |
| Visa | $9,682.37 | W | |
| 8045 Twp. Rd. | $5,100 | | H |
| 8095 Twp. Rd. | $52,854 | | H |
| Highlander Loan | $13,972.11 | W | |
| Debt to Wife | | $41,231.49 | |
| Debt to Husband | | | $60,414 |

{¶20} This resulted in Wife having $16,868.51 in net assets while the Husband had $1,032,786.00 in net assets[1]. The court calculated that Husband was receiving $1,015,917.49 more assets than Wife received. Therefore, the court determined that

---

[1] The calculation of the Husband's assets is incorrect. The correct total is $1,039,800.

Husband must pay half of the $1,015,917.49 or $507,958.73 to Wife to equalize his share of the net marital assets.

**{¶21}** The court also determined that Wife spent $34,545 during the period between the final hearing before the magistrate on November 16, 2022 and the filing of the Magistrate's Decision on January 26, 2023, and awarded half that amount ($17,272) in the form of a setoff to Husband. The court found that the $17,272 that Wife withdrew from the company "will be credited as already paid, and the total property equalization payments owed, are $340,706.73."

**{¶22}** Finally, the court addressed Husband's act of blocking the camper, which prevented Wife from using it. The court cited the magistrate's August 3, 2021 temporary orders that stated "[Husband] needs to move the vehicles blocking the camper. [Wife] is permitted to use it." The court found Husband was in contempt for violating the temporary orders by not moving the vehicles that were in front of the camper preventing Wife access. The decision also stated that Wife made monthly payments on the camper of $204.11 during the period it was unavailable to her from August 3, 2021 to August 1, 2022, which totaled $2,449.32. The decision concluded that Husband was obligated to reimburse Wife that amount within 30 days or be sentenced to jail for three days.

**{¶23}** Husband appeals this judgment entry.

ASSIGNMENTS OF ERROR

I.      THE TRIAL COURT COMMITTED PREJUDICIAL ERROR WHEN IT DID NOT AWARD APPELLANT HIS SEPARATE PROPERTY INTEREST IN THE MARITAL RESIDENCE LOCATED AT 8045 TOWNSHIP ROAD 241 SE, LOGAN OHIO 43138.

II.     THE TRIAL COURT COMMITTED PREJUDICIAL ERROR WHEN IT DID NOT REDUCE THE FAIR MARKET VALUE OF 8095 TOWNSHIP ROAD 241 SE, LOGAN, OHIO 43138 COMMENSURATE WITH THE VALUE OF THE LIFE INTEREST RETAINED BY THE GRANTORS.

III.    THE TRIAL COURT COMMITTED PREJUDICIAL ERROR WHEN IT DIVIDED APPELLEE'S WRONGFUL DRAWS.

IV.     THE TRIAL COURT COMMITTED PREJUDICIAL ERROR WHEN IT FOUND APPELLANT IN CPONTEMPT AND ORDERED HIM TO PAY PLAINTIFF 42,449.32 TO REIMBURSE HER 12 MONTHS MORTGAGE PAYEMNTS.

V.      THE TRIAL COURT COMMITTED PREJUDICIAL ERROR WHEN IT MADE APPARENT CLERICAL ERRORS.

{¶24} Prior to addressing Husband's assignments of error, we address the value of Husband's assets.  The trial court calculated the value of Husband's 15-listed assets to be worth $1,093,200.  That calculation is incorrect.  The correct value of these assets is $1,039,800.  Thus, Husband's assets were worth $53,400 less than the court had calculated.  Courts have sua sponte raised calculation errors on appeal.  *See Wojanowski v. Wojanowski*, 2014-Ohio-697, ¶ 16-17 (8th Dist.).  Because we reverse the trial court's judgment in part for other reasons listed below, on remand the court should consider the corrected calculation of Husband's assets and determine whether it may require a modification of the parties' asset/debt distribution.

FIRST ASSIGMENT OF ERROR

{¶25} In Husband's first assignment of error, he claims that the trial court erred when it found that the 8045 Twp. Rd. property was marital property.  Husband claims that he acquired the 8045 Twp. Rd. property in 1993 more than three years before he was married in 1996.  During the marriage, the 8045 Twp. Rd. property was improved

by adding a mobile home in 1997 that cost $32,925.00. Husband testified that its fair market value was $26,201.10 at the time of the final hearing. Husband claims that the trailer did not transmute the property to marital property because the appreciation was passive and the separate lot was traced to him. Additionally, the Husband argues that the debt being paid down on this property is of no consequence because it was paid by the parties' company.

{¶26} In response, the Wife asserts that the trial court did not commit prejudicial error when it found the 8045 Twp. Rd. property was marital in nature. A trial court's decision in determining whether property is separate or marital will not be reversed if there is some competent, credible evidence to support the court's decision.

{¶27} Wife asserts that the 8045 Twp. Rd. property was commingled with marital property and became marital property requiring of equitable distribution. During the marriage, the parties purchased a mobile home and placed it on the 8045 Twp. Rd. property. They added a porch and made other improvements. Even if the business paid for the improvements, she maintains that the business was started after the marriage for the purpose of supporting the marriage. Both Husband and Wife worked for the business and routinely used income from the business to support personal expenses.

{¶28} Therefore, Wife argues that the trial court did not abuse its discretion in finding that the 8045 Twp. Rd. property was marital property. Accordingly, she maintains that the Husband's first assignment of error should be overruled.

Law

{¶29} " '[U]nder R.C. 3105.171(B), a court is under a mandatory duty to classify property in a divorce proceeding as either marital or separate before dividing the property.' " *Smith v. Smith*, 2019-Ohio-899, ¶ 31 (4th Dist.), quoting *King v. King*, 2014-Ohio-5836, ¶ 15 (4th Dist.). "The trial court's characterization of the parties' property involves a factual inquiry." *Thompson v. Thompson*, 2024-Ohio-2147, ¶ 31 (4th Dist.), quoting *Barkley v. Barkley*, 119 Ohio App.3d 155, 159 (4th Dist. 1997). "We review such determinations under a manifest weight of the evidence standard of review." *Id.* "Thus, the trial court's characterization of property as marital or separate will not be reversed if it is supported by some competent, credible evidence." *Stuckey v. Stuckey*, 2015-Ohio-5061, ¶ 13 (4th Dist.), citing *Shupert v. Shupert,* 2013-Ohio-604, ¶ 10 (4th Dist.). "This deference is premised on the fact that the finder of fact is in a superior position to 'view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony.' " *Id*., quoting *Seasons Coal Co., Inc. v. Cleveland,* 10 Ohio St.3d 77, 80 (1984). "The finder of fact is free to accept or reject all, part, or none of the testimony of each witness." *Id*., citing *Harrington v. Harrington,* 2008-Ohio-6888, ¶ 11 (4th Dist.).

{¶30} "Marital property" does not include any separate property of the parties, which is defined as "[a]ny real or personal property or interest in real or personal property that was acquired by one spouse prior to the date of the marriage[.]" R.C. 3105.171(A)(3)(b) and (A)(6)(a)(ii). "The commingling of separate property with other property of any type does not destroy the identity of the separate property as separate property, except when the separate property is not traceable." R.C. 3105.171(A)(6)(b).

"The party seeking to establish that an asset is separate property bears the burden of proof by a preponderance of the evidence to trace the asset to separate property." *Hurte v. Hurte,* 2005-Ohio-5967, ¶ 21 (4th Dist.), citing *Jenkins v. Jenkins*, 2015-Ohio-5484, ¶ 26 (4th Dist.). In order for a spouse to demonstrate that his or her pre-marital contribution to the purchase of a property has remained separate property, "he must be able to 'trace' those initial funds to the present equity." *Davis v. Davis*, 2013-Ohio-211, ¶ 38 (11th Dist.), citing *Jones v. Jones,* 2008-Ohio-2476, ¶ 21 (4th Dist.).

{¶31} "R.C. 3105.171(A)(3)(a)(iii) provides that active appreciation of separate property constitutes marital property." *Rinehart v. Rinehart*, 1998 WL 282622, *6 (4th Dist. May 18, 1998). "The statute defines 'marital property' as including ' * * * all income and appreciation on separate property, due to the labor, monetary, or in-kind contribution of either or both of the spouses that occurred during the marriage.' " *Id*., quoting R.C. 3105.171(A)(3)(a)(iii). Financing property or improvements to real property during the marriage with marital funds can preclude a party from being able to trace what previously was separate property. *See Earnst v. Earnst*, 2003-Ohio-704, ¶ 40-42 (11th Dist.).

### Analysis

{¶32} The evidence indicates that Husband owned the 8045 Twp. Rd. property before he was married. However, after the parties were married, they made numerous improvements to the property. In valuing this property, the appraiser considered the property, as well as improvements made to the property after the parties were married, including: (1) a mobile home on a foundation with a walk-out basement; (2) two porches; (3) an outbuilding with a bedroom, kitchen, living room and a full bathroom; (4)

a pond; (5) a carport; (6) a deck; a lawn and landscape features; an onsite well; and a septic system. The appraiser valued the property, including the improvements at $215,000. These improvements and the property were financed during the parties' 20-year marriage and the parties still owe on two of the mortgages.

{¶33} Husband argues that the court found that the 8045 Twp. Rd. property was marital because it was commingled with improvements that included two out-buildings. He claims that no evidence was presented regarding the value of those improvements.

{¶34} The evidence shows that the property at issue with improvements is worth $215,000 based on the appraisal for purposes of the divorce. Because the husband asserts that the property at 8045 Twp. Rd. is his separate property, he bears the burden of tracing the value back to identify his separate property. He has offered that the mobile home at the time of the hearing was worth $26,010.10, which could be deducted from the value of the property. However, he fails to offer the value of any of the other improvements, including the foundation with a walk-out basement for the mobile home; the two porches; the outbuilding; the pond, lawn; landscaping; well; or the septic system. The value of his separate property has been comingled with the value of the other improvements as well as the couples financing of the property and improvements over their approximately 20-year marriage. Without being able to trace the value of the remaining improvements or financing, the Husband cannot disentangle the value of his separate property from the value of the commingled property.

{¶35} Therefore, we find that there is some evidence to support that the 8045 Twp. Rd. property was transmuted from Husband's separate property to marital property. Accordingly, we overrule Husband's first assignment of error.

SECOND ASSIGNMENT OF ERROR

{¶36} In his second assignment of error, the Husband asserts that the trial court committed prejudicial error when it did not reduce the fair market value of the 8095 Twp. Rd. property commensurate with the value of life interest retained by the grantors. Husband proposes that *Cook v. Ohio Dep't of Job & Fam. Servs.*, 2003-Ohio-3479 (4th Dist.), which sets forth a method of valuing a life estate for purposes of determining Medicaid eligibility, could be used to value the life estate for purposes of valuing the 8095 Twp. Rd. property.

{¶37} In response, the Wife asserts that evidence was presented that the life estate had no value because it was between relatives who would likely forgive the life estate. The trial court was within its discretion to accept that evidence. Therefore, Wife argues that Husband's second assignment of error should be overruled.

Law

{¶38} "Before a trial court can distribute property, the court must value that property. Indeed, a trial court must place a monetary value on every contested asset of the parties in a divorce proceeding." *Burriss v. Burriss*, 2010-Ohio-6116, ¶ 27 (4th Dist.), citing *Knight v. Knight*, 2000 WL 426167 (4th Dist. Apr. 12, 2000). "Because the valuation of a specific asset in a divorce case is a question of fact, we review a trial court's valuation under the manifest-weight-of-the-evidence standard." *See Covert v. Covert,* 2004-Ohio-3534, ¶ 6 (4th Dist.), citing *Brown v. Brown,* 2003-Ohio-304, ¶ 13 (4th Dist.). Consequently, we will not reverse the trial court as long as there is some competent, credible evidence supports the trial court's valuation. *Pryor v. Pryor*, 2009-

Ohio-6670, ¶ 21 (4th Dist.), citing *Sec. Pacific Natl. Bank v. Roulette*, 24 Ohio St.3d 17,

20 (1986).  "This standard of review is highly deferential and even 'some' evidence is

sufficient to sustain the judgment and prevent a reversal."  *Barkley* 119 Ohio App.3d

155, 159 (4th Dist. 1997).

{¶39} "It is common knowledge that a life estate in property is less valuable than

full fee ownership."  *Gregory v. Rice*, 678 S.W.2d 603, 607 (Tex. App. 1984).  However,

this court discussed at length the inherent difficulty of valuing life estates:

> It is virtually impossible to precisely value a life interest in real estate. The
> most that can be done is to approximate the value by taking into account
> all contingencies and surrounding circumstances including similar or
> comparable land value and life expectancy. The difficulty in valuing life
> estates is readily seen in its historical treatment. One old common law
> rule computed the value of a life interest by simply assigning it one-third
> the value of the fee. Another rule valued life estates at "seven years'
> purchase of the fee." The more modern practice is to estimate the value
> of a life estate with reference to the life tenant's life expectancy as shown
> by recognized mortality tables.  (Citations omitted.)

*Cook,* 2003-Ohio-3479, ¶ 16 (4th Dist.)

{¶40} As recognized in *Cook*, actuarial tables can assist in valuing a life estate.

There are many sources for actuarial tables, including the Internal Revenue Service and

the rules for Medicaid.  *See Est. of Goubeaux*, 2023-Ohio-647, ¶ 9 (10th Dist.) (The IRS

has actuarial tables); *Stutz v. Ohio Dep't of Job & Fam. Servs.*, 2017-Ohio-7287, ¶ 13

(2017) (The rules of Medicaid contain an actuarial table).  Therefore, we find that an

actuarial table is a at least good starting point in valuing a life estate for the purpose of

valuing property in a divorce.

Analysis

**{¶41}** The appraiser herein, Frank Hinkle, testified that in appraising life estates he relies on actuarial tables and whether the holder of the life estate and the owner of the property are closely related.  The latter factor he deems pertinent, because if there is a close relationship between the two, they may agree to modify the life estate.

**{¶42}** Hinkle testified that he was aware that the holders of the life estate pertaining to the 8095 Twp. Rd property were "elderly and toward the end of the actuarial tables."  He also knew that they were closely related to the property owner, so they could have reached an agreement that would have prevented the life estate from being an impediment selling the property.  Considering both factors, Hinkle concluded that the life estate had no value. Hinkle otherwise appraised the property as being worth $ 280,000.  We conclude that Hinkle's findings are some evidence that support the court's $280,000 valuation of the 8095 Twp. Rd. property.

**{¶43}** Therefore, because the trial court's valuation of the property is supported by the manifest weight of the evidence, we overrule Husband's second assignment of error.

THIRD ASSIGNMENT OF ERROR

**{¶44}** In his third assignment of error, Husband argues that the trial court committed prejudicial error when it equally divided Wife's wrongful draws between the parties.  The Magistrate's Decision awarded the business to Husband, but Wife, who was an officer of the business, still had access to the company.  Husband filed a post-hearing motion for a set off due to Wife's financial misconduct.  Husband claims that

Wife misappropriated $34,545 from the company.  Husband argues that he was awarded the business and therefore Wife's entire $34,545 of expenditures removed from the business account were no longer marital property.  Accordingly, the entire $34,545 should have been reimbursed to Husband, not just half.

**{¶45}** In response, the Wife asserts that the court properly took all the evidence and assets into consideration when it decided the division of property.  She alleges that she "is not getting any additional benefits from the trial court decision to take this into consideration."  She is not a thief.  The court should overrule Husband's third assignment of error.

Law

**{¶46}** R.C. 3105.171(E)(4) states: "If a spouse has engaged in financial misconduct, including, but not limited to, the dissipation, destruction, concealment, nondisclosure, or fraudulent disposition of assets, the court may compensate the offended spouse with a distributive award or with a greater award of marital property." " 'The decision of whether to make an award under this statute is reviewed for an abuse of discretion.' " *King*, 2014-Ohio-5836, ¶ 38 (4th Dist.), quoting *Jacobs v. Jacobs,* 2003-Ohio-3466, ¶ 22 (4th Dist.).   "An abuse of discretion is more than an error of judgment; it implies that the trial court's attitude was unreasonable, arbitrary or unconscionable." *Id.*  "The burden of proving financial misconduct is on the complaining spouse." *Id.* at *Jacobs* at ¶ 25.

Analysis

{¶47} Husband asserts that Wife committed financial misconduct by spending approximately $34,000 of company funds at a time when she no longer had an interest in the company because it had been awarded to him.  Therefore, Husband maintains that he should have been able to offset the entire $34,000 against the equalization payment that he owed Wife, as opposed to merely offsetting half, or approximately $17,000 as the court ordered.

{¶48} During the final hearing the magistrate discussed some of Wife's spending.  However, it appears the approximately $34,000 of spending that Husband challenged was not part of that discussion as shown supra.

{¶49} After the final hearing, Husband filed objections to the Magistrate's Decision, raising Wife's inappropriate spending in his third objection.  Subsequently, he also filed three different motions asserting that Wife engaged in financial misconduct by spending approximately $34,000 of company funds after the company had been awarded to him, thereby unjustifiably reducing the value of the company.  The court never expressly ruled on any of these motions.

{¶50} The court did overrule Husband's objection that asserted Wife's spending was inappropriate summarily finding that the magistrate had addressed Wife's "personal expenses."  However, in the final decree, the court also found that Wife had spent in excess of $34,000 of company funds *after* the final hearing.  This finding conflicts with the court's determination that the magistrate had considered "Wife's expenses" when

overruling Husband's third objection.  Thus, it appears that neither the magistrate nor the court considered whether Wife's $34,000 in spending was financial misconduct.

**{¶51}** While it appears the failure to address the spending issue herein was unintentional, we nevertheless find it to be reversible error. *See Knauer v. Keener*, 143 Ohio App.3d 789 (2d Dist. 2001).  In *Keener*, the court of appeals "conclude[d] that the trial court . . . erred when it failed to consider [the appellant's] alternate [argument]. [However, the court] hasten[ed] to add that we are not directing the trial court to *grant* Keener's [argument] but merely to consider it."  (Emphasis original.)  *Id.*

**{¶52}** Consistent with *Keener*'s rationale, we reverse the trial court's equitable division of the Wife's $34,575 of spending and remand the matter for the court to determine whether Wife's spending was financial misconduct as alleged in Husband's various motions.  However, like *Keener* it is imperative that the trial court understands that our reversal is not an indication of this court's opinion as on the merits of Wife's spending but is merely an order for the court to consider the matter.  To that extent, we sustain Husband's third assignment of error and remand the matter for consideration consistent with our decision.

FOURTH ASSIGNMENT OF ERROR

**{¶53}**  Husband asserts that the court committed prejudicial error when it found him in contempt for blocking the camper and ordering him to reimburse Wife $2,449.32 for 12 months of mortgage payments.  He claims that on the first day of the final hearing, the parties agreed that their daughter would make the payments on the camper and the parties would merely be guarantors on the loan.  Additionally, Husband claims

there was no temporary order allocating the camper's debt and that Wife did not have to pay it. The Husband further argues that the record lacks proof that the Wife was deprived of the campers use after the order, and that any alleged loss of use has no relationship to the payments, as they were to be made by their daughter.

{¶54} In response, Wife claims that the court ordered Husband to move the camper so it could be used by her, but he did not do so. Thus, Husband's failure to act was in direct conflict with the court's order so it was appropriate for a contempt order. Wife maintains that it was Husband's inaction that resulted in the court ordering him to reimburse wife for paying the loan on the camper during that period. Therefore, the order requiring Husband to reimburse Wife for the payments she made on the camper was not against the manifest weight of the evidence. Accordingly, Wife argues that Husband's fourth assignment of error be overruled.

Law

{¶55} " 'Contempt is a disregard of, or disobedience to, the orders or commands of judicial authority.' " *Liming v. Damos*, 2011-Ohio-2726, ¶ 8 (4th Dist.), quoting *McClead v. McClead,* Washington App. No. 06CA67, 2007-Ohio-4624, ¶ 32 (4th Dist.). " 'Contempt proceedings are often classified as *sui generis,* neither civil nor criminal. However, most courts distinguish between civil and criminal contempt proceedings.' " *Id*., quoting *State ex rel. Corn v. Russo,* 2001-Ohio-15 (2001). "[C]ivil contempt exists when a party fails to do something ordered by the court for the benefit of an opposing party." *Montgomery v. Montgomery*, 2004-Ohio-6926, ¶ 13 (4th Dist.), citing *Pedone v. Pedone*, 11 Ohio App.3d 164, 165, (8th Dist. 1983).

**{¶56}** " 'Civil contempt sanctions involve a conditional penalty.' " *Id.* at ¶ 52 (4th Dist.), quoting *Docks Venture, L.L.C.*, 2014-Ohio-4254, ¶ 14.  "They are " ' "designed for remedial or coercive purposes and are often employed to compel obedience to a court order." ' " *Id.* quoting Docks *Venture* at ¶ 15, quoting *State ex rel. Corn v. Russo*, 90 Ohio St.3d 551, 554 (2001).  "[I]n fashioning the sanction for civil contempt, the court must allow the contemnor the opportunity to purge the contempt."  *Schuman v. Cranford*, 2003-Ohio-2117, ¶ 10 (4th Dist.), citing *State v. Kilbane*, 61 Ohio St.2d 201, 207 (1980).

**{¶57}** A finding of civil contempt must be supported by clear and convincing evidence."  *Montgomery v. Montgomery*, 2004-Ohio-6926, ¶ 13 (4th Dist.), citing *Brown v. Executive 200, Inc.*, 64 Ohio St.2d 250, 253 (1980).  "Moreover, the decision to hold a person in contempt lies within trial court's sound discretion."  *Id.*, citing *State ex rel. Ventrone v. Birkel*, 65 Ohio St.2d 10, 11 (1981).  We "will not reverse that decision unless an abuse of that discretion is established."  *Id.*, citing *Carroll v. Detty*, 113 Ohio App.3d 708, 711 (4th Dist. 1996).  "Consequently, absent an abuse of discretion, an appellate court will ordinarily uphold a trial court's contempt decision."  *Superior Off. Space, LLC v. Carpenter*, 2023-Ohio-967, ¶ 53 (4th Dist.), citing *Jones v. Jones*, 2021-Ohio-1498, ¶ 28 (4th Dist.).  "An abuse of discretion is 'an unreasonable, arbitrary, or unconscionable use of discretion * * *.' " *Id.*, quoting *State v. Brady*, 2008-Ohio-4493, ¶ 23.   An abuse of discretion has also been recognized to be "a view or action that no conscientious judge could honestly have taken."  *Brady* at ¶ 23, citing *State v. Cunningham,* 2007-Ohio-1245, ¶ 25.

Analysis

**{¶58}** On August 3, 2021, the magistrate ordered Husband to move vehicles that were blocking the camper.  On April 20, 2022, Wife filed a motion seeking an order finding Husband in contempt for his failure to give her access to the camper.  At the November 16, 2022 final hearing, Wife testified that vehicles blocked her access to the camper.  She maintained that the camper was unable to be used by their daughter until she took it with her to college.  We find these facts are consistent with the purpose of a contempt order, which aimed to compel Husband to fulfill a court directive for Wife's benefit.  Specifically, he failed to comply with the magistrate's August 3, 2021 order to move vehicles blocking the camper, which would have provided Wife with access.

**{¶59}** The court also ordered Husband to reimburse Wife the camper payments she made during the period Husband prevented her from accessing it within 30 days to avoid a three-day jail sentence.  Compelling Husband to comply with the court's prior order by imposing a potential punishment with the ability to purge that punishment is consistent with civil contempt law.

**{¶60}** Under these circumstances, we find the court's contempt order was not unreasonable, arbitrary, or capricious.  It was an action that a conscientious judge could honestly have taken.  Therefore, we find that the trial court's contempt order was not an abuse of the trial court's discretion.  Accordingly, we overrule Husband's fourth assignment of error.

FIFTH ASSIGNMENT OF ERROR

**{¶61}** In his fifth assignment of error, Husband asserts that the trial court committed prejudicial error by making apparent clerical errors in child support.  The court initially ordered child support for two children in the amount of $552.29.  After the parties' oldest child graduated from high school, the child support amount was not timely reduced, but it was later corrected on May 19, 2023, to $304.93 without deviation.  Husband argues that the court mistakenly included the pre-reduction figure of $552.29 in its order.  Paragraph 6 of the court's order states that effective June 1, 2022, the support amount is $304.93.  Paragraph 7 indicates that any amounts paid over this should be credited as an overpayment.  However, paragraph 8 erroneously states that effective January 1, 2023, the support amount is $552.29, which Husband argues is a clerical error since there was no upward deviation after emancipation.  Husband argues that this error has resulted in him paying too much child support and therefore is an abuse of its discretion.

**{¶62}** In response, the Wife does not dispute that the trial court incorrectly ordered Husband to pay $552.29 in child support rather than $304.93 because the parties' older child is emancipated.  However, Wife maintains that a small clerical order is not an abuse of discretion.  Therefore, Wife asserts that we should overrule Husband's fifth assignment of error.

Law

**{¶63}** "Absent an abuse of discretion, an appellate court will not disturb a trial court's determination regarding child support obligations." *Palomino v. Palomino*, 2024-

Ohio-2873, ¶ 11 (4th Dist.), citing *Pauly v. Pauly*, 80 Ohio St.3d 386, 390. "An abuse of discretion connotes a decision that is unreasonable, arbitrary, or unconscionable." *Id*., citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). "Nevertheless, a trial court's discretion is not unfettered and the mandatory statutory child-support requirements must be followed in all material respects." *Sapinsley v. Sapinsley,* 2007-Ohio-1320, ¶ 8 (7th Dist.). Ordering a parent to pay child support after the child is emancipated is not harmless error. *See Carpenter v. Carpenter*, 2010-Ohio-6601, ¶ 34 (7th Dist.).

Analysis

**{¶64}** The parties agree that the trial court erred in ordering Husband to pay $552.29 in child support for both children beginning January 1, 2023 because as of May 4, 2022 Mackenzie was emancipated. Child support is intended only to support minor children and requiring a parent to pay child support for a child who is emancipated is prejudicial error. *Carpenter* at ¶ 34.

**{¶65}** Therefore, we sustain Husband's fifth assignment of error and remand the matter of child support for the trial court to correct the calculation and reimburse Husband for any overpayment that he made.

CONCLUSION

**{¶66}** In conclusion, we overrule Husband's first, second, and fourth assignments of error, but sustain his third and fifth assignments of error. Accordingly, we affirm in part and reverse in part the trial court's final divorce decree and remand the matter for

further proceedings consistent with this decision, including considering whether the

corrected value of the Husband's assets affects the division of property.

**JUDGMENT AFFIRMED IN PART AND REVERSED IN PART AND CAUSE
REMANDED FOR FURTHER PROCEEDINGS.**

## JUDGMENT ENTRY

It is ordered that the JUDGMENT IS AFFIRMED IN PART AND REVERSED IN PART AND CAUSE REMANDED FOR FURTHER PROCEEDINGS and that the parties shall split the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Hocking County Common Pleas Court, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, J. and Hess, J.:  Concur in Judgment and Opinion.


For the Court,


BY: _____
Kristy S. Wilkin, Judge


**NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**